**Ricky L. WILLS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Aug. 2, 1993.

Kevin C. Kennedy, Clarksville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Bettye Springfield–Carter and Kathy M. Principe, Asst. Attys. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Justice.

This appeal arises from a post-conviction case in which the petitioner, Ricky Wills, contends that he is entitled to have set aside guilty pleas that he entered in 1971 and 1982 because (1) he was not properly advised of his constitutional rights prior to pleading guilty and (2) he was not informed that the resulting convictions could be used to enhance punishment for subsequent convictions.

■ There is no merit to the latter of these two claims. Failure to advise a defendant of the future consequences of a conviction, at the time he enters a guilty plea on which that conviction is based, was not recognized as a ground for post-conviction relief until 1987.[1] *See State v. McClintock,* 732 S.W.2d 268, 273 (Tenn. 1987).

However, the constitutional validity of the petitioner's guilty pleas under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is an appropriate question for post-conviction review. The petition thus raises an issue that we have most recently discussed in *State v. Neal,* 810 S.W.2d 131 (Tenn.1991), and *Johnson v. State,* 834 S.W.2d 922 (Tenn.1992); and *Jack Charles Blankenship v. State of Tennessee,* 858 S.W.2d 897 (Tenn.1993). In all three of those opinions, we reiterated *Boykin's* essential message that to be valid, a defendant's guilty plea must be entered freely and voluntarily:

What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought ..., and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

*Boykin,* 395 U.S. at 243–244, 89 S.Ct. at 1712.

■ Our task, then, is to review the record of the guilty plea submission hearing and any evidence concerning the entry of the guilty plea that is later offered at the post-conviction hearing. Measured by the standards of *Boykin, Neal, Johnson,* and *Blankenship,* it seem obvious that the 1971 and 1982 guilty plea hearings in this case do not meet the constitutional mandate.

The transcript of the 1971 submission hearing reflects the following meager colloquy between the trial judge and petitioner Wills:

THE COURT: Mr. Wills, you understand what you are doing and you want to plead guilty to this charge of larceny and take three (3) to five (5) years—and you understand that?

MR. WILLS: Yes, sir.

[Other matters not audible on disc recorded by another court reporter.]

The hearing in 1982 was almost as brief as the one in 1971:

---

1. Contrary to the dissenting judge's comment that *McClintock* "did not deal with advice about the future consequence of a guilty plea in any respect," opinion at page 311, O'Brien, J., concurring in part and dissenting in part, the Court in *McClintock* observed:

We need not restate the clear Constitutional requirements surrounding criminal proceedings; however, any court accepting a plea of guilty must make it clear to the defendant that the resulting judgment of conviction may be used in a subsequent proceeding to enhance the punishment for subsequent offenses.

732 S.W.2d at 273. Although it amounted to *dictum* in *McClintock,* and despite the fact that such a requirement is not found in *Boykin,* in Rule 11 of the Tennessee Rules of Criminal Procedure, or in any prior cases interpreting *Boykin* or Rule 11, this pronouncement has generally been heeded by Tennessee trial judges in guilty plea proceedings following the release of *McClintock.* It has thus become "positive *dictum,*" i.e., *dictum* "fated to be followed."

THE COURT: This is Ricky Wills, is it?

DEFENDANT: Yes.

THE COURT: Mr. Wills, under 19343, you are charged with bringing stolen property into the State, and you have entered a guilty plea, but you have the right to enter a not guilty plea and have your case presented to a jury and the State would have to prove your guilt beyond a reasonable doubt. You have given up that right when you have entered this guilty plea here, so, is that a knowing and understanding plea on your part?

DEFENDANT: It is.

THE COURT: Do you fully understand what you are doing—do you think this is the best thing for him to do, Mr. Hodges?

MR. HODGES: Yes, Your Honor, I do.

THE COURT: All right, Mr. Wills, on your guilty plea then to transporting stolen property into the State, you are found guilty, you are sentenced to not less than three (3) nor more than three (3) years in the penitentiary, to run concurrent with your present sentence. He is to be returned to the penitentiary.

MR. HODGES: Thank you, your Honor.

[WHEREUPON, other matters not pertinent to the above-captioned cause were brought before the Court.]

As our opinions in *Johnson* and *Blankenship* make clear, more than what transpired in these two hearings is necessary in order to comply with *Boykin*. Moreover, our review of the post-conviction hearing in this case has failed to turn up evidence to suggest that the state has discharged the burden placed on it by *State v. Neal* with regard to the 1971 and 1982 proceedings. We conclude that the decision of the Court of Criminal Appeals to the contrary cannot be sustained and that we have no choice but to reverse that judgment and remand the case to the trial court for further proceedings, including (but not limited to) an order setting aside the guilty pleas challenged in this action.

We note that as an alternative basis for denying relief, the Court of Criminal Appeals invoked the doctrine of laches, citing as authority our opinion in *Arthur v. State*, 483 S.W.2d 95 (1972). In that case, we observed that in the name of finality, "[d]efendants to criminal prosecutions, like parties to civil suits, should be bound by the judgments entered therein," and that "[w]hen they fail to make timely objections to errors of the courts they must not be allowed at later times of their choosing— often, perhaps, after witnesses against them have become unavailable—to assert those grounds in post-conviction actions." *Id.* at 97. *Arthur*, however, involved not the doctrine of laches, but that of waiver. In *Arthur*, we refused to accept as grounds for post-conviction relief certain alleged errors that had not been the subject of timely objection by the defendant at trial. The case did not involve constitutional deficiencies such as those exposed in this case, which undermine the integrity of convictions by rendering vulnerable the guilty pleas on which they are based.

There is no authority of which we are aware for equating the contemporaneous objection rule and the waiver doctrine with the constitutional protections of *Boykin*. Hence, we explicitly reject any notion that the doctrine of laches can be invoked to deprive the petitioner of relief that is constitutionally mandated in this case, even though we, like the Court of Criminal Appeals, place a high value on finality in post-conviction litigation. We suggest that the goal of finality is better achieved by a statute of limitations such as that now found in T.C.A. § 40–30–102, than by impressing an equitable doctrine such as laches on a distinctly criminal constitutional case.

Reversed and remanded for further proceedings.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

O'BRIEN, J., concurs in part and dissents in part.

O'BRIEN, Justice, concurring and dissenting.

I write separately to supplement certain inadequacies evident in the lead opinion.

Initially it should be noted that in *State v. McClintock*, 732 S.W.2d 268 (Tenn.1987), advice about the future consequence of a guilty plea was not at issue. The thrust of the opinion was that a facially valid judgment of conviction on a prior DUI charge, which had not been attacked by post-trial motions or on direct appeal, could not be collaterally attacked in a subsequent prosecution for a second DUI offense, but only by recourse to the Post–Conviction Procedure Act. The opinion pointed out that if the errors of which a defendant complains are of *Constitutional dimensions*, post-conviction proceedings are available. As this Court clearly summarized in *State v. Neal*, 810 S.W.2d 131, 140 (Tenn.1991), "In the event of an omission of advice that is constitutionally mandated, relief may be obtained on direct appeal; or, if the plaint has not been waived and relief is timely filed for, upon a post-conviction petition proceeding. Where the admission of advice is simply the failure to conform to a rule or supervisory pronouncement of this Court, and does not involve a constitutional rights deprivation, review and relief must be obtained by direct appeal following entry of the judgment." This advice was reiterated in *Johnson v. State*, 834 S.W.2d 922, 925 (Tenn.1992), where the Court stated, "Whether the additional requirements of *Mackey* were met is not a constitutional issue and cannot be asserted collaterally," citing *State v. Prince*, 781 S.W.2d 846, 853 (Tenn.1989).

The lead opinion otherwise considers the transcript of the submission hearings and evidence heard in the trial court and considered in the Court of Criminal Appeals and finds it insufficient to carry the burden imposed on the State in accordance with *State v. Neal*, supra, in regard to the conviction proceedings. It ends with the conclusion that the decision of the Court of Criminal Appeals cannot be sustained and that the case must be remanded to the trial court for further proceedings, including (but not limited to) an order setting aside the guilty pleas challenged.

The evidence and circumstances involved in a guilty plea submission raised in a collateral attack must first be considered by the post-conviction judge, and, in the event of an appeal, by the intermediate court and ultimately by this Court. As we have repeatedly said, most recently in *Johnson v. State*, 834 S.W.2d 922 (Tenn. 1992), when a petition charging a trial court failed to advise the petitioner of his constitutional rights and failed to determine that a guilty plea was knowing and voluntary, this allegation, if supported by evidence, is sufficient to shift the burden of going forward to the State. It does not, *ipso facto* entitle the petitioner to relief. The State may rebut the allegation with proof of substantial compliance with the advice requirement, which would show that the petitioner was made aware of his constitutional rights, or the State alternatively may show that the petitioner was aware of his constitutional rights and that therefore the trial court's failure to give the mandated advice was harmless error.

Assuming arguendo that remand to the trial court for further proceedings is appropriate, it should be made clear that any rehearing should include all the constitutional and statutory safeguards which the law provides. *Neal v. State*, supra; *Johnson v. State*, supra. Moreover, there is obviously an abundance of evidence which was not introduced at this post-conviction hearing. Apparently both lawyers representing defendant at the prior guilty plea submissions are still alive and living in the community, as well as some of the state officers involved. Perhaps one or the other of the trial judges are still available. There is certainly evidence available as to the competency of the respective lawyers representing the petitioner at the guilty plea submissions.

It appears there is little doubt that this petitioner is a career criminal. At the time of the post-conviction hearing he had petitions pending in Robertson County attacking the constitutionality of his guilty plea conviction for robbery; a similar one in Davidson County on a robbery charge, and a third in Rutherford County, all according to his testimony, "basically the same grounds stated in the petition in this case." It seems remarkable that four (4) different

judges, at four (4) different trials, in four (4) different counties, would make the same constitutional errors in approving guilty plea submissions. Petitioner's consistent history of entering guilty pleas began in 1971 and continued through 1987 with, insofar as can be determined from this record, five (5) separate submissions to offenses ranging from robbery to transporting stolen property. In 1987 he accepted a 40–year sentence as a Range II offender to avoid an habitual criminal prosecution, which would have imposed a mandatory life sentence. He now testifies that he is in the process of attempting to set aside his 40–year robbery sentence by asserting substantially the same grounds of unconstitutionality claimed in each of his former submission convictions.

Such a blatant attempt to subvert the processes of justice should not be tolerated and the most clear and convincing evidence should be required to reverse the judgment of a trial court which has heard and considered evidence of the nature offered up in this case. The factual findings of a trial court in a post-conviction relief hearing should not be reversed on appellate review unless the petitioner can establish that the evidence preponderates against those findings. *Clenny v. State,* 576 S.W.2d 12 (Tenn.Cr.App.1978). Such findings are given the weight of a jury verdict. *McCracken v. State,* 529 S.W.2d 724 (Tenn.Cr.App. 1975). There was ample evidence in this case to sustain the trial court's findings, within the parameters of the constitutional criteria set by the United States Supreme Court and this Court.

Defendant should be aware that upon a rehearing, if he is successful in establishing that his guilty plea submissions were constitutionally void, he is not free from the onus of the charges against him. A remedy in such cases is to allow a defendant to resubmit a guilty plea in accordance with procedures which meet constitutional requirements, or, in the alternative, he is subject to retrial under the same or a new indictment. *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *North Carolina v. Pearce,* 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969); *Patten v. State,* 2 Tenn.Cr.App. 179, 452 S.W.2d 664, 666 (1970), cert den'd 400 U.S. 844, 91 S.Ct. 88, 27 L.Ed.2d 80 (1970).

The State also raised the doctrine of laches as a bar to review the 1971 guilty plea. This issue is explicitly rejected in the lead opinion, a view with which I disagree.

The federal courts have recognized the doctrine for many years in habeas corpus petitions by State prisoners alleging constitutional deprivation. In 1976 the Congress amended Rule 9 to Title 28, Sec. 2254, pertaining to delayed or successive petitions. Rule 9(a) provides that a petition may be dismissed if it appears that the State of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the State occurred. The doctrine has been adopted in numbers of sister states in post-conviction proceedings including Kentucky, *Strahan v. Blackburn,* 750 F.2d 438 (1985); Indiana, *Holmes v. State of Indiana,* 591 N.E.2d 594 (Ind.App. 3 Dist.1992); Florida, *Remp v. State,* 248 So.2d 677 (Fla.App.1970). Alabama, *Falkner v. State,* 586 So.2d 39 (Ala.Cr.App. 1991); Colo., *People v. Bravo,* 692 P.2d 325 (Colo.Cr.App.1984).

This Court has held in *Burford v. State,* 845 S.W.2d 204, 208 (Tenn.1992), it is clear that the State has a legitimate interest in preventing the litigation of stale or fraudulent claims, citing *Jimenez v. Weinburger,* 417 U.S. 628, 636, 94 S.Ct. 2496, 2501, 41 L.Ed.2d 363, 370 (1974). In *Michel v. Louisiana,* 350 U.S. 91, 76 S.Ct. 158, 163, 100 L.Ed. 83 (1955), the United States Supreme Court said, "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right." The test is whether the time period provides an applicant a reasonable opportunity to have the claimed issue heard and deter-

mined. *Michel,* supra, 350 U.S. at p. 99, 76 S.Ct. at p. 163.

It seems only reasonable that a rule which complies with federal standards in cases of this nature should apply. Such a rule in this case would entitle the petitioner to test the constitutionality of his 1971 conviction with whatever evidence he is able to muster. The State then should be afforded an opportunity to make a showing that it has been prejudiced as a result of the petitioner's delay. If the State makes out a prima facie case the burden shifts to the petitioner to show either that the State actually is not prejudiced or that the delay in testing the constitutionality of his conviction is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the State occurred. If he fails to carry this burden the guilty plea submission conviction must stand.

Subject to these comments I concur in results in the lead opinion.